IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL CASE NO. 3:15-cr-00001-TCB-RGV |
| COREY BROWN, *et al.*, | |

**MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION ON DEFENDANT'S PRETRIAL MOTIONS**

Defendant Corey Brown ("Brown") is charged in a five-count indictment with Hobbs Act robbery and conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2. [Doc. 1].[1] Brown has filed a "Motion to Suppress Evidence of Out of Court Photographic Identification and All Testimony Tainted as a Result Thereof," [Doc. 40], and a "Particularized Motion to Suppress Evidence of Out of Court Photographic Identification and All Testimony Tainted as a Result Thereof," [Doc. 43]. The government has filed a "Pre-Hearing Response to Defendant's Motion to Suppress Identification," [Doc. 44], and following an evidentiary hearing held on April 17, 2015,[2] the parties filed post-hearing briefs, [Docs. 53 & 62]. For the

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF, except that citations to the evidentiary hearing transcript are cited according to the transcript page number.

[2] See [Doc. 52] for the transcript of the evidentiary hearing. Citations to the evidentiary hearing transcript hereinafter will be referred to as "(Tr. at ___)." In

reasons that follow, it is **RECOMMENDED** that Brown's motions to suppress evidence and testimony, [Docs. 40 & 43], be **DENIED**.

## I. STATEMENT OF FACTS

**A.     Family Dollar Robbery of April 21, 2014**

On April 21, 2014, three individuals robbed a Family Dollar store located in Hapeville, Georgia. [Doc. 1 at 2–3]; (Tr. at 6, 10; Ex. 2). After identifying three suspects, the local detective who was assigned to investigate the robbery assembled three separate photo arrays (or lineups), consisting of six photos each, with each lineup containing a photo of one of the three suspects. (Tr. at 6, 10; Ex. 1). One of the lineups included a photograph of Brown, who appears to be wearing a gray hooded sweatshirt. (Ex. 1). On July 25, 2014, Detective Stephen Cushing ("Detective Cushing") presented the photo lineups to J.W., a witness to the April 21 robbery who was also physically assaulted by one of the robbers. (Tr. at 6, 17–18; Ex. 1). Detective Cushing was not assigned to the investigation of the robbery, (Tr. at 6), and at the time he showed the photos to J.W., he did not know that Brown was a suspect, (Tr. at 9–10 (Detective Cushing testifying that he did not know that Brown's photo was in the lineup and "had no idea which . . . position the suspect was in")).

---

addition, the government submitted exhibits at the hearing, which will be referred to as "( Ex. ___)."

Just before presenting the photos, Detective Cushing read aloud to J.W. a "Photo Line-Up Admonition" form, instructing J.W. that the photos in the lineup "may or may not include a photograph of the person or persons who committed the crime," and that she "should only make an identification if [she could] do so." (Tr. at 11, 15–16; Ex. 1). After signing the admonition form to confirm that she understood these instructions, (Tr. at 15–16; Ex. 1), J.W. selected Brown's photo from among the lineups by circling the photo and writing her initials next to it, along with the notation: "Big one put hands on me," (Ex. 1; Tr. at 12–13); see also (Tr. at 17 (Detective Cushing explaining that J.W. told him that the individual portrayed in Brown's photo "was definitely the one that grabbed her and that she was tussling with . . ., and . . . that threw her down on the ground")). Detective Cushing testified that all six of the photographs in the lineup that included Brown's photo appeared to be driver's license photos obtained from the department of driver services. (Tr. at 23–24 (stating that the Hapeville police typically tried to use "driver's license photographs [with] . . . a similar background" in assembling photo arrays)).

**B.     CVS Robbery of April 22, 2014**

On April 22, 2014, three individuals robbed a CVS store in Newnan, Georgia. [Doc. 1 at 3]; (Ex. 4). The local investigator who was assigned to the case subsequently compiled three photo arrays consisting of six photos each. (Tr. at

26–29; Ex. 5).³ On August 26, 2014, Investigator Kevin Yarbrough ("Investigator Yarbrough"), of the Coweta County Sheriff's Office, showed the photo arrays to S.G., who had witnessed the April 22 CVS robbery. (Tr. at 26, 28; Ex. 5). At the time he presented the lineups, Investigator Yarbrough was not assigned to the investigation of the robbery and knew nothing about the suspects. (Tr. at 26–27 ("I don't know anything about the suspects or the fillers in the lineup . . . . I don't have anything to do with the case so . . . I don't even know who we are looking at.")). Investigator Yarbrough began the lineup procedure, which was video recorded at the Sheriff's Office, by reading aloud to S.G. a series of "Photo Line-Up Instructions," from which he advised S.G. that "[i]t is just as important to clear innocent person(s) from suspicion as to identify guilty parties"; that "[t]he individuals depicted in the[] photos may not appear exactly as they did on the date of the incident"; and that "[t]he person who committed the crime may or may not be in the set of photographs being presented." (Ex. 3; Ex. 5 at 00:57–01:36). S.G. then signed the instruction form and indicated that she understood the instructions that had been read to her. (Ex. 3; Ex. 5 at 1:34–02:14).

---

³ Each of the photo arrays included a photo of one of the three suspects, and all of the photographs were obtained from the Hapeville Police Department and were identical to the photographs that Detective Cushing had presented to J.W. on July 25, 2014. (Tr. at 27–29; Ex. 3). However, in this instance, each photo used in the array was shown to the witness one at a time, instead of presenting all six at once. (Tr. at 29).

The first lineup shown to S.G. included the photograph of Brown. (Tr. at 28; Ex. 5). When S.G. saw Brown's photo, she said, "I think he might [have] been the guy in the back. I could be wrong. I do remember a gray hoodie." (Ex. 5 at 04:21–04:30).[4] Investigator Yarbrough interjected: "not, not paying attention to the clothing. . . ."—to which S.G. replied, "No, not paying attention to the clothes." (Id. at 04:31–04:36). S.G. then placed her hands on top of the photo so as to cover up the image of Brown's clothing while Brown's face remained visible.[5] (Id. at 04:35–04:40). S.G. next began to tap the face of the photo with both index fingers, mentioning something about a "round face" and using her hands to gesture around her face as she spoke. (Id. at 04:47–04:55). Investigator Yarbrough then asked S.G., on a scale of one to ten, how sure she was that "that's the guy?" and S.G. replied, "like a 7." (Id. at 04:55–05:04). S.G. then wrote her initials next to the photo of Brown to indicate that she had selected him from the first lineup, (id. at 05:48–05:56; Ex. 3; Tr.

---

[4] Near the beginning of the lineup presentation, S.G. made a comment about having seen only "one face" during the robbery, see (Ex. 5 at 02:48–02:52), but she distinguished the appearance and positions of the robbers based on the order in which they entered the store, see, eg., (id. at 04:39–04:50 (describing her memory of one shorter man and two taller men during the robbery), 04:47–04:55 (describing the suspect's "round face" in making her selection), 04:21–04:30, 09:00–09:19, 10:15–10:35 (distinguishing among different suspects portrayed in the photos based on the suspects' relative positions among the robbers)).

[5] Throughout the lineup procedure, Investigator Yarbrough and S.G. were both seated at opposite ends of a round table on which the photos were displayed. See (Ex. 5).

at 32–33), and Investigator Yarbrough removed all of the photos of the first lineup from the table and placed them on a chair to his right, (Ex. 5 at 06:00–06:13; Tr. at 41–42, 46–47).

Upon reviewing the second lineup, S.G. selected a photo that she said she was "pretty sure" ("like an 8") represented the "first guy that [she] saw walk in the door." (Ex. 5 at 09:00–09:19). After S.G. initialed her selection, Investigator Yarbrough placed the photos from the second lineup on the chair to his right, just as he had done with the first lineup. (Id. at 09:27–09:30; Tr. at 46–47). Lastly, S.G. selected a photo from the third lineup, stating that she was "like 100%" sure that it was "the guy that came in front." (Ex. 5 at 10:15–10:35). During her identification of the photo from the third lineup, S.G. also pointed in the direction of the chair where Investigator Yarbrough had stacked the previous two lineups, and said, "I might be wrong about that one." (Id. at 10:20–10:23; Tr. at 46–47). However, S.G. did not specify as to which of the two prior lineups she was referring. (Ex. 5 at 10:20–10:23).

## II. DISCUSSION

Brown moves to suppress the evidence of the photographic identifications made by J.W. and S.G. on the ground that the procedures surrounding the photographic arrays in which he was identified were unduly suggestive. [Doc. 40

at 1–2; Doc. 43 at 3–4]. He also seeks to suppress any future identifications that are tainted by the earlier photographic identifications. [Doc. 40 at 1–2; Doc. 43 at 3–4]. The government responds that the photo identification evidence in this case should not be suppressed because the lineup procedures were not impermissibly suggestive. See generally [Docs. 44 & 62].

The Supreme Court has developed a two-part test to determine whether an out-of-court identification was proper. First, the Court must "ask whether the original identification procedure was unduly suggestive." United States v. Brown, 441 F.3d 1330, 1350 (11th Cir. 2006); see also Manson v. Brathwaite, 432 U.S. 98, 106-07 (1977). If, and only if, the procedure was unduly suggestive, the Court must then "consider whether, under the totality of the circumstances, the identification was nonetheless reliable." Brown, 441 F.3d at 1350 (internal marks omitted) (quoting United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001)); see also United States v. Smith, 459 F.3d 1276, 1294 (11th Cir. 2006) (alteration, citation, and internal marks omitted) ("The court must first decide whether the procedure was impermissibly suggestive, and if it was suggestive the court must then determine whether the identification procedure created a substantial likelihood of misidentification."). Brown "has the burden of proving that the identification procedure was impermissibly suggestive." United States v. Stevenson, Criminal Case No.

1:11–cr–00350–ODE–RGV, 2012 WL 1424169, at *5 (N.D. Ga. Mar. 7, 2012), adopted by 2012 WL 1418635, at *1 (N.D. Ga. Apr. 23, 2012) (citing Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988)). "In evaluating the suggestiveness of a photographic array, courts consider the size of the array, the manner of its presentation by law enforcement officers, and the details of the photographs themselves." Id., at *5 (citation and internal marks omitted); see also United States v. Perkins, 787 F.3d 1329, 1344 (11th Cir. 2015).

Here, the size of the photo arrays—six pictures in each lineup—clearly supports a finding that the identification procedures were not unduly suggestive, and Brown does not contend otherwise. See [Docs. 40 & 43]; United States v. Perkins, Criminal Case No. 1:10–CR–97–JEC–LTW, 2011 WL 2294163, at *7 (N.D. Ga. Apr. 21, 2011), adopted by 2011 WL 2268055, at *1 (N.D. Ga. June 8, 2011), aff'd, 787 F.3d at 1329 (citations omitted) ("[T]he size of the array for each of the six-picture lineups militates in favor of a finding that the photo array was not unduly suggestive."). Similarly, Brown does not complain about the manner in which the investigators presented the lineups to the witnesses. See [Docs. 40 & 43]. Instead, Brown argues that the photo arrays were unduly suggestive because "the photo used of him in the lineup[(s)] was a photo in which he was wearing the same attire [that] the robbers" wore at the time of the robberies. [Doc. 53 at 5]. Brown argues

8

that the July 25 lineup was suggestive for the additional reason that "Brown[']s photo and one other photo are 'close-ups' in comparison to the other four photographs." [Id.]. Neither of these arguments has merit, and Brown's motion to suppress the identification evidence in this case is due to be denied.

A lineup is not unduly suggestive merely because the defendant's photograph can be distinguished from others, and there is no requirement that a defendant in a lineup be surrounded by others identical in appearance. See Cikora, 840 F.2d at 896-97 (district court did not clearly err by admitting identification where only defendant's photograph in lineup had height markings in background and defendant was a different race than several other subjects). Indeed, the Eleventh Circuit, and other courts around the country, have held that lineups are not unduly suggestive so long as the photos reflect "substantial similarity in facial features, complexion, facial hair, and general body type and appearance," notwithstanding any minor variations in clothing or similar insubstantial differences. See United States v. Smith, 148 F. App'x 867, 874-75 (11th Cir. 2005) (per curiam) (unpublished) (internal marks omitted); United States v. Walker, 199 F. App'x 884, 887 (11th Cir. 2006) (per curiam) (unpublished) (affirming district court's finding that array was not unduly suggestive where it included "similar looking African-American males who were similar in complexion and had short hair," and where, "although there

[were] some differences between each photo, nothing unreasonably suggested that [defendant] was the actual suspect in the offense"); United States v. Anderson, 156 F. App'x 218, 220-21 (11th Cir. 2005) (per curiam) (unpublished); see also United States v. Burbridge, 252 F.3d 775, 780 n.5 (5th Cir. 2001) (that defendant was the only one in photographic lineup with black t-shirt not impermissibly suggestive); United States v. Johnson, 56 F.3d 947, 954 (8th Cir. 1995) (photo spread comprised of African-American men with similar features to the African-American suspect was proper); Harker v. Maryland, 800 F.2d 437, 444 (4th Cir. 1986) (photo array not unduly suggestive where only one other individual wore clothing similar to defendant's clothing, as identification was based more on facial features than clothing).

The photographs used in the lineups in this case all depict African-American males of similar age and with similar haircuts and facial hair. Likewise, each photograph is a facial shot, not a side view; each depicts the same profile consisting of the shoulders, neck, and face; and each subject is dressed in civilian clothes, not in prison garb. As such, Brown's photo is "sufficiently similar to the others in size, details, and manner of presentation to render it inconspicuous," United States v. Henderson, Criminal Case No. 1:11–CR–255–TWT–RGV, 2012 WL 1665870, at *5 (N.D. Ga. Apr. 16, 2012), adopted by 2012 WL 1658696, at *1 (N.D. Ga. May 11, 2012),

and the photo lineups in which Brown was identified as a suspect were therefore not unconstitutionally suggestive.

Although Brown argues that the lineups were unduly suggestive because he was the only individual in the photos who appeared to be wearing a gray sweatshirt similar to what the robbers wore during the robberies, there is no evidence that either J.W. or S.G. relied on the appearance of Brown's clothing in selecting his photo from the lineups. When J.W. selected Brown's photo, she stated that he was the individual who had physically assaulted her in the course of the Family Dollar robbery, and there is nothing that indicates her selection was influenced by the appearance of Brown's attire in the photograph in any way. See (Ex 1; Tr. at 12–13, 17). Similarly, the recording of the lineup procedure related to the CVS robbery clearly indicates that S.G. selected Brown's photograph based on the appearance of his face, and—quite explicitly, in fact—not on the basis of his clothing. See (Ex. 5 at 04:31–04:55 (S.G. selecting Brown's photo only after covering up the portions of the photo showing his clothing, tapping the image of his face with both hands, mentioning something about a "round face" while gesturing around her face, and indicating that she was "not paying attention to the clothes")).[6]

---

[6] As noted above, S.G. was also explicitly instructed by Investigator Yarbrough that "[t]he individuals depicted in the[] photos may not appear exactly as they did on the date of the incident," and that "[t]he person who committed the crime may or may not be in the . . . photographs being presented," and S.G.

Moreover, federal courts have consistently found that photographic lineups are not unduly suggestive simply because one of the individuals depicted in the lineups happens to be wearing clothing that appears similar to the clothing the suspect was observed to be wearing at the time of the crime, particularly where, as here, the photos clearly focus on the individual's face and do not accentuate his clothing, and where the witness' identification appears to be ultimately based on her alleged recognition of the suspect's facial features.[7]  See, e.g., United States v. Peterson, 411 F. App'x 857, 864 (6th Cir. 2011) (unpublished) (rejecting defendant's argument "that the photo array was unduly suggestive because his photo was the only one in dark clothing, which was part of the description of the robber," since this and other discrepancies did not outweigh the "many substantial similarities"

---

expressly confirmed that she understood these instructions just minutes before selecting Brown's photo. See (Ex. 3; Ex. 5 at 00:57–02:14); see also (Tr. at 11, 15–16; Ex. 1) (Detective Cushing advising J.W. that the photos in the lineup "may or may not include a photograph of the person or persons who committed the crime," and that she "should only make an identification if [she could] do so)).

[7] Brown suggests that "the only basis upon which [S.G.] could [have made] any other identification[, besides the identification from the third lineup,] is the clothing worn by the suspect," since S.G. was the most certain about her identification from the third lineup and "stated that she only saw one person" during the robbery. [Doc. 53 at 7]. As previously noted, however, S.G. did not indicate that she only saw one person during the robbery, but clearly described her memory of three separate individuals and then proceeded to identify those individuals based on their relative positions in the store during the robbery. See (Ex. 5 at 04:21–04:30, 04:39–04:50, 09:00–09:19, 10:15–10:35).

between the photos); Gibson v. Blackburn, 744 F.2d 403, 405 (5th Cir. 1984) (photo array in which defendant was wearing clothing similar to the suspect's clothing described by witnesses at the time of the crime did not render the array unduly suggestive where only a "small portion" of the relevant clothing was visible in defendant's photo); Futrell v. Roper, No. 4:09CV00028 AGF, 2012 WL 1060117, at *4, 11 (E.D. Mo. Mar. 29, 2012) (trial court reasonably concluded that photo array was not unduly suggestive even though defendant was the only person in the array who was wearing a hooded sweatshirt similar to what the perpetrators were seen wearing at the time of the crime, where defendant's "clothing was not the sole basis for [the witnesses'] identifications"); United States v. Roberson, No. 07-3116-01-CR-S-GAF, 2008 WL 2323865, at *4 (W.D. Mo. June 2, 2008) (citations omitted) ("[W]here an identification has been made on the basis of the individual's face, even if there is some suggestive clothing, the photo array is not impermissibly suggestive where the array is a fair representation of individuals similar in appearance."); United States v. Boykin, Nos. Civ.A. 99–0433–AH–M, Crim. 97–00018–AH, 2000 WL 206788, at *3 (S.D. Ala. Feb. 11, 2000) (rejecting defendant's argument that "his photograph was impermissibly suggestive because in the photograph he is wearing a jacket that fits the description of a jacket the robber wore at the time of the offense," where, "to the extent that [d]efendant's jacket [was]

13

apparent [in the photo], the details [were] not emphasized"); Kearney v. State of Md., 567 F. Supp. 1248, 1250 (D. Md. 1983) (citation and internal marks omitted) (photo array not unduly suggestive despite defendant's allegation that he "was the only member of the array wearing clothes which matched the description the robbery victim had given the police on the night of the incident"—and despite evidence that the "victim had noted the distinctive features of [defendant's] clothing when the victim was reviewing the [photo] array"—since there was also evidence that the victim ultimately selected defendant's photo "on the basis of [defendant's] face"); see also Perkins, 2011 WL 2294163, at *7 (rejecting defendant's argument that "photo lineups were overly suggestive because they contained only one picture of a man with gold teeth and the witnesses acknowledged that the gold teeth was the prominent feature of the man they identified," where "the [individuals] depicted in the photographs had the same gender, appeared to be African-American, appeared to be roughly the same age, had similar hair length, skin tone, and, for the most part, similar facial shape and fullness of the face").

Courts have also held that in cases where "the defendant is the only person in the array wearing particular clothing described by the [witness] as having been worn by the perpetrator, . . . the identification procedure is not suggestive" so long as "the clothing at issue is not unusual[.]" Maldonado v. Burge, 697 F. Supp. 2d 516,

543 (S.D.N.Y. 2010) (citations omitted). Indeed, "[b]ecause the average witness would know people can easily change clothes, it would be unusual for variations in clothing to be unduly suggestive," United States v. Raboy, No. CR 09-678-PHX-JAT, 2010 WL 3522269, at *2 (D. Ariz. Sept. 2, 2010), and a "hooded sweatshirt is [certainly] not such an unusual article of clothing," Roper, 2012 WL 1060117, at *11 (citation omitted), as to make it "all but inevitable that [S.G. or J.W] would identify [Brown]" merely because his photo happened to portray him wearing that attire, Perry v. New Hampshire, 132 S. Ct. 716, 724 (2012) (citation and internal marks omitted). See also United States v. Perez, Criminal Action No. 1:13–CR–0293–WBH, 2014 WL 1309088, at *6 (N.D. Ga. Mar. 31, 2014), adopted at *1 (citing Cikora, 661 F. Supp. at 819) ("The crucial test of suggestiveness is not dissimilarity of subjects from the suspect or from the description of the suspect given to the police, but rather whether it can be said that the picture selected would *inevitably* have been selected whether or not the individual pictured was guilty or innocent.").

Furthermore, while Brown contends that only his photo and one other photo from the July 25 lineup are "close-ups,"[8] [Doc. 53 at 5 (internal marks omitted)], "a review of the [] array shows that each photo depicts the same proportions of each

---

[8] In fact, the photo of the other individual is noticeably closer, and his face is consequently larger, than the photo depicting Brown, which undermines the argument that the size of Brown's photo was unduly suggestive. See (Ex. 1).

15

person (head and neck) and the photograph of [Brown] does not show any more or any less of him than is depicted in the other photographs," Henderson, 2012 WL 1665870, at *4 (second alteration in original). In fact, Brown "'offer[s] no legal precedent or common-sense reason to support the proposition that a moderately zoomed-in photo of a suspect would be suggestive of that suspect's guilt,'" and even though Brown's photo is slightly zoomed in, any such difference is "negligible at best." Johnson v. Scott, No. 2:13–cv–500–FtM–38CM, 2014 WL 5454321, at *9 (M.D. Fla. Oct. 27, 2014) (alteration in original). See also United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994) ("While it is true that [defendant's] photograph . . . is slightly . . . more close-up than the others, . . . these differences did not render the array suggestive."); United States v. Swain, No. S4 08 Cr. 1175(JFK), 2011 WL 4348142, at *6 (S.D.N.Y. Aug. 16, 2011) (citation omitted) ("Although Defendant's photo is zoomed in so that his head appears slightly bigger than the other subjects' heads, the difference is not so appreciable as to be unduly suggestive.").

Brown also attempts to cast doubt on the reliability of S.G.'s selection of his photograph by arguing that her expression of uncertainty (made during her review of the third lineup) about one of her earlier selections was "presumably" made in reference to her selection of Brown's photo, since "she was the least certain of his

identity" among all of the photos presented. [Doc. 53 at 7].[9] However, this argument overlooks the fact that, in making each of her selections from the three lineups, S.G. specifically identified the individuals depicted in the photos based on their relative positions among the robbers when they entered the store, and that she identified the photos selected from the first and third lineups as portraying individuals of differing relative positions. More specifically, in selecting Brown's photo from the first lineup, S.G. expressly associated the individual portrayed in the photo with the "guy in the back" during the robbery, (Ex. 5 at 4:08–05:13); in selecting the photo from the second lineup, she made no mention of the "guy in the back," but associated the photo exclusively with the "first" individual to enter the store, (id. at 08:34–09:20); and when she reviewed the third lineup, she again made no reference to the "guy in the back," but identified the individual portrayed in the photo as the suspect who "came in front," (id. at 10:11–10:36) — adding, at that point, that she was not sure about one of her previous identifications. Thus, because S.G. identified the individuals from the first lineup and the third lineup as occupying different positions during the onset of the robbery, there is no apparent conflict

---

[9] Brown states that S.G. actually "[r]ecant[ed]" one of her earlier selections when she identified the individual from the third lineup, [Doc. 53 at 7], but S.G. in fact did nothing more than indicate some uncertainty, see (Ex. 5 at 10:20–10:23 ("I might be wrong about that one.")), and at no point during the lineup did she actually retract any of her previous identifications.

between those identifications, and therefore no reason to believe that S.G.'s relative certitude about her selection of the suspect from the third lineup would somehow prompt her to express doubt about her selection of a different suspect from the first lineup. Rather, any uncertainty in S.G's identification of the robbers appears to relate to the second and third lineups since she referred to both of those individuals as the person who entered the store "first" or was "in front" during the CVS robbery. Since S.G's expression of doubt about the earlier identification came in the immediate context of her expression of certainty that her selection from the third lineup was the first individual to enter the store, it appears that whatever doubt she may have had about a previous identification was directed at the photo selected from the second lineup, and not Brown's photo that she selected from the first lineup.

In any event, "[w]hile [S.G.] expressed some uncertainty about her identification, that uncertainty is not reflective of undue suggestiveness of the array,"[10] and any uncertainty she expressed therefore "goes to the weight to be

---

[10] Indeed, it appears that all of the photos used in the lineups, including Brown's photo, were simply driver's license photos that were obtained in neutral fashion from the department of driver services, (Tr. at 23–24, 27–29), and there is no indication of any improper action by law enforcement in selecting which photos to use in the lineups. See United States v. Pierce, No. 3:11cr08-WKW, 2012 WL 1030465, at *2 (M.D. Ala. Mar. 9, 2012), adopted by 2012 WL 1021839, at 81 (M.D. Ala. Mar. 27, 2012) (photo array not unduly suggestive where array was comprised of "driver license photographs from the [relevant state database], which included

accorded to her testimony, but does not render her identification unreliable or inadmissible." United States v. Ford, Criminal Action No. 1:12–CR–297–TWT–ECS, 2013 WL 1969876, at *3–4 (N.D. Ga. Apr. 8, 2013), adopted by 2013 WL 1966232, at *1 (N.D. Ga. May 10, 2013), aff'd, 784 F.3d 1386 (11th Cir. 2015)). Accordingly, Brown has failed to carry his burden of showing that the photo arrays were impermissibly suggestive, and it is **RECOMMENDED** that his motions to suppress, [Docs. 40 & 43], be **DENIED**.[11]

---

the defendant and five other persons of similar descriptions"); see also Perry, 132 S. Ct. at 721 (emphasis added) ("*When no improper law enforcement activity is involved*, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt."); United States v. Jernigan, Criminal Action No. 1:14–cr–0024–AT–JFK, 2015 WL 1781747, at *8 (N.D. Ga. Apr. 10, 2015), adopted at *1 (emphasis added) (citation omitted) ("'The fallibility of eyewitness evidence does not, *without the taint of improper state conduct*, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness.'").

[11] Because the photographic arrays are not unconstitutionally suggestive, the inquiry ends there. Williams v. Weldon, 826 F.2d 1018, 1021 (11th Cir. 1987) ("We must first decide whether the original identification procedure was unduly suggestive. If not, that ends the inquiry."); United States v. Jackson, No. 08-21050-CR, 2009 WL 605282, at *6 (S.D. Fla. Mar. 9, 2009) (citation omitted) ("Because the photographic lineups shown to the witnesses were not suggestive, the undersigned does not need to reach the second inquiry, whether the identification was reliable."); see also Perry, 132 S. Ct. at 730 ("[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."). Of course, "the 'recommendation that the

### III.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Brown's motions to suppress evidence and testimony, [Docs. 40 & 43], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial as to all defendants.

**IT IS SO ORDERED AND RECOMMENDED**, this 5th day of August, 2015.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

identification testimony should not be suppressed in no way prohibits [Brown] from cross-examining the pertinent witnesses at trial as to any inconsistencies or discrepancies in their testimony or otherwise questioning them with respect to the procedures used during the identification [] and the reliability of any positive identifications made.'" Stevenson, 2012 WL 1424169, at *7 (citation omitted).